# EXHIBIT 1

## <u>FINDINGS OF FACT & DECISION</u>

Case No.:            209151

Student's Name:      C█████████ P████ (Student)

Date of Birth:       ████████2002

District:            02

Hearing Request by:  Marina Perez (Parent)

School:              International Institute for the Brain (iBRAIN)

Hearing Dates:       September 17, 2021, September 23, 2021, October 27, 2021, November 5,

                     2021, January 7, 2022, March 4, 2022, April 15, 2022, and June 3, 2022

Actual Record Close: September 2, 2022

Hearing Officer:     Keila Tennent

Hearing Officer's Findings of Fact and Decision

Case No. 209151

## NAMES AND TITLES OF PERSONS WHO APPEARED AT THE HEARING

For the Student:

Peter Albert, Esq. ("Parent's Attorney")(September 17, 2021, September 23, 2021, and October 27, 2021)

Lynn Clarke, Esq. (Parent's Attorney/Observer)(January 7, 2022)

Sarah Kahn, Esq. (Parent's Attorney/Observer)(April 15, 2022)

John Henry Olthoff, Esq. ("Parent's Attorney")(January 7, 2022, March 4, 2022, April 15, 2022, and June 3, 2022)

Marina Burgos Barra, Mother ("Parent") September 17, 202, October 27, 2021, November 5, 2021, January 7, 2022, and June 3, 2022)

Ed Perkins, Esq. (Parent's Attorney/Observer)(June 3, 2022)

Ashleigh Rousseau, Esq. (Parent's Attorney)(September 17, 2021, and September 23, 2021)

Tiffany Semm, Education Director, iBRAIN ("Director, Private School")(April 15, 2022)


For the Department of Education:

Shannon McCabe, School Psychologist ("DOE School Psychologist")(September 23, 2021, and November 5, 2021).

Mitchel Paskin, Esq. DOE Attorney ("DOE")(All dates)

Mayra Pelaez, DOE Social Worker ("DOE Social Worker") (November 5, 2021)


Interpreters

Marina Fazzallari (January 7, 2022, and March 4, 2022)

Benito Quezada (September 23, 2021, November 5, 2021 and June 3, 2022)

Hearing Officer's Findings of Fact and Decision

Case No. 209151

## ISSUES

This matter comes before me because of the Parent's Due Process Complaints ("DPC") filed on or about June 29, 2021 (Ex. P-A) and July 7, 2021 (Ex. P-B) regarding the 2018-19 and 2021-22 school years.  The  Complaints were consolidated under case number 209151 on August 3, 2021. (Ex. P-C.)[1]  The DPC alleged that the New York City Department of Education ("DOE") denied the Student a Free Appropriate Public Education ("FAPE") in violation of the Individuals with Disabilities Education Act ("IDEA") by failing to properly evaluate the Student and offer him a proper program while he attended public school up to and through the 2018-19 school year.  The Parent further argues that the 2021-22 Individualized Education Program ("IEP") was also flawed as it failed to incorporate key aspects of the Student's program at the Private School.  The Parent seeks funding for the Student's unilateral placement at the Private School during the 2021-22 school year and compensatory education for the denial of FAPE for the  2018-19 school year and the school years preceding it.

The DOE asserted that it provided a FAPE to the Student for each school year and that the Parent's claims, up to and through the 2018-19 school year, are time-barred by the 2-year Statute of Limitations.  In addition to the DOE's Statute of Limitations claim, the key issue for this case is whether the DOE's alleged failure to properly evaluate the Student's vision impairment resulted in the creation of a defective IEP incapable of affording the Student meaningful educational benefit or progress based on his unique circumstances.

---

[1]      Exhibits shall be referred to as follows: "P" for Parent Exhibit, "D" for DOE Exhibit, "IHO" for the Impartial Hearing Officer's exhibits and "T" reflects Transcript where relevant.

## **PROCEDURAL HISTORY**

I was appointed as the Independent Hearing Officer ("IHO") to this case on July 22, 2021.  A pre-hearing conference was held on July 29, 2021, followed by a Pendency Hearing on August 20, 2021.  A Due Process Hearing over several different hearing dates.   Both parties submitted exhibits into evidence and called witnesses.

The record closed on September 2, 2022.

## **FINDINGS OF FACT**

1. The Student, who is 19 years old, has been diagnosed with quadriplegic cerebral palsy, muscle hypotonia, developmental delay, coxa valga, mental retardation, dystonia, chorea, impaired mobility, microcephaly, and intellectual disability.  He is nonverbal and non-ambulatory and is dependent in all activities of daily living. (P-Ex.A-2.).

2. The Student attended public school from age five until he enrolled at the Private School for the 2019-20 school year. (P-Ex.A-2.).

3. The School Psychologist from the Student's IEP for the 2021-22 school year testified that the team reviewed all the reports from the Student's Private School and related services providers to create the recommended program. (T-102)(D-Ex.8.)

4. The School Psychologist confirmed that the DOE did not recommend Vision Education Services ("VES") because the Mother said her son's vision was ok and was improving.  The DOE was aware that the Student had received VES from ages six to seven but relied on the expression of concern from a student's teachers/parent in determining whether VES was needed. (T-105.)

5. The IEP Team, nevertheless, incorporated the report related to the Student's cortical vision impairment into the goals/management needs sections. (T-105-107.)

6. The School Psychologist also confirmed that the IEP did not recommend Music Therapy as music is part of the curriculum provided to every student. (T-112.)   She explained that Music Therapy is only one of several methods used to meet certain goals and the IEP recommended different ways to meet the Student's discreet goals. (T-116-117.)  She explained that the IEP sought to have the Private School's Music Therapy goals met through the related services (Speech-language, Occupational, and Physical Therapies combined with Assistive Technology and a paraprofessional alongside the Student's academic program). (T-117-118.)

7. The School Psychologist also confirmed her opinion that the 20212-22 IEP afforded the correct balance between the Student's academic program and related services to achieve his academic goals.  She pointed out that the related services were flexibly structured to be either push-in or push-out, as determined by the service providers, and to ensure they, alongside the Student's academic program, could be accomplished within the school day. (T-124-125.)  She confirmed that the cadence of the Student's related services is based on the evaluative materials provided concerning his Present Levels of Performance (PLOP) and the concerns from the parent/teacher/service providers. (T-131-142.)

8. On cross-examination, the School Psychologist admitted that there was no updated classroom observation report for the Student and that while it, as well as other evaluations, were requested by the DOE, a classroom observation was not performed due to technical difficulties at the Private School.

9.  She reiterated that VES was not recommended based on the Parent's statement and the absence of a recommendation from the Student's doctor. (T-173-193.)

10. The Director of the Private School explained that the Private School is a small, highly specialized special education program created for children who suffer from acquired brain injuries or brain-based disabilities.  Many of its students, including the Student, are non-verbal and non-ambulatory and all require a 1:1 paraprofessional to assist with activities of daily living and to have access to and benefit from the educational program. Many of the students require a 1:1 nurse to attend to their medical needs. (P-Ex.X-2.)

11. The Private School offers an interdisciplinary program and operates on a 12-month extended school year and offers all related services during an extended school day which runs from 8:30 a.m. to 5:00 p.m.  (P-Ex.X-2.)

12. The Private School provides its students with IEPs geared toward improving functioning skills appropriate to their cognitive, physical, and developmental levels, through a collaborative and multi-disciplinary approach that incorporates the best practices from the medical, clinical, and educational fields. It also offers its student a wide variety of related therapy services, usually in 60-min intervals.  She stressed the importance of 60-minute sessions for the Student who has a very broad range of skills/deficits across the disciplines. (P-Ex.X-2)(T-289-294.)

13. In July 2019, and As part of the evaluations performed during the intake process for the Student's enrollment for the 2019-20 school year, the Private School's VES Provider confirmed that the Student has a cortical vision impairment which, the Director explained, is extremely problematic as the Student's only basis for communication is

visual.  She explained that because the Student lacks expressive ability, his other deficits are compounded/exasperated by this vision impairment. (T-286-289, T-297.)

14. The Private School Director described improvements, which she characterized as "compensatory education" the Student has received since his enrollment which include improvements to his vision, strength, and stamina.  These improvements, in turn, have positively impacted his mobility(walking/standing), communication, and ADL skills. (T-299-330.)

15. Some of these skills the Student has acquired, the Private School Director explained, should have been achieved at a much earlier age and she attributes their absence to either not being provided and/or regression. (T-302-305.)  She implied that the pace at which the Student has acquired certain skills since enrolling at the Private School, informs her belief that the absence of those skills is not attributable to the Student's deficits or any lack of ability due to his disabilities. (T-301-306.)

16. The Private School Director acknowledged that the Student will never be completely independent but stressed that he should be further along i.e., more functionally efficient in his DLS and more independent i.e., needing less help. (T-310-312.)

17. The Private School Director opined that the Student would need 5 to 7 years (at the Private School or similar facility) to develop his delayed language skills to where they ought to be based on his age. (T-330-332.)

18. The Parent testified that she could not recall ever receiving either the School Location letter or Prior Written Notice for the 2021-22 school year from the DOE.  (D-Exs. 2-3)(T-376.)

19. The Parent confirmed that the Student attended the DOE-recommended school for the 12 years immediately before his enrollment at the Private School.  She stated that she attended all the IEP meetings and that the DOE consistently recommended the same/program placement for the Student though she complained that he was not receiving all the services mandated by his IEPs.  She claimed that no one on the IEP Team ever told her that she could file a Due Process Complaint if she disagreed with the recommended program/school placement. (T-384.)  She did not recall ever receiving the Procedural Safeguards from the DOE.  She did not, however, deny receiving other communications from the DOE. (T-378-379.)

20. The Parent believed the Student made very little progress while at the DOE-recommended school. She said while at the DOE school, the Student was never given an assistive technology device nor did the DOE conduct an evaluation for assistive technology.  Similarly, the Student did not have VES or a Music Therapy Evaluation. While he received Speech, OT, and PT, those sessions were inadequate - not long enough and were sometimes not provided. (T-378-382.)

21. The Parent learned about the Private School based on a recommendation from a friend sometime in 2018. (T-389-391.)  Also, during the 2018-19 school year, the Parent indicated that she reached the tipping point of frustration with the public school as upon visiting the school she observed that her son was dirty and wasn't eating.  She decided to stop sending him to the public school after determining that she could better care for him herself at home. (T-394-396.)

22. The Parent described the progress the Student has made since his enrollment at the Private School.  She believes his vision and ability to pay attention have improved.  She would like him to stay at the Private School until he is 25 years old. (T-382-383)(T-392.)

23. The Parent claimed that it was only when she enrolled the Student at the Private School, did she learn of her ability to file a complaint. (T-385)  She was not aware she could switch her son to a different school until 2018 when a friend told her so and told her about the Private School. (T-389-391.)

24. The Parent insisted that she repeatedly and consistently complained to the Student's IEP Team about her issues and concerns and that they told her "it was not possible" to address her concerns which eventually motivated her to change schools. (T-398.)

## CONCLUSION OF LAW & DISCUSSION

The purpose of the IDEA is "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs."[2]  Such education must be sufficient to confer some educational benefit upon the handicapped child.[3]  In deciding whether a School District provided a student with FAPE, the focus is limited to whether the: (a) Respondent complied with the procedures outlined in the IDEA, and (b) whether the student's IEP is reasonably calculated to enable the student to receive educational benefits.[4]  Under this second substantive prong, a school district need not maximize the potential of children with disabilities, but the door of

---

[2]     *Bd. of Educ. V. Rowley*, 485 U.S. 176, 179-91 (1982); *Hinson v. Merritt Educ. Ctr.*, 579 F. Supp. 2d 89, 98 (2008)(*citing* 20 U.S.C. §1400(d)(1)(A)).
[3]     *Rowley*, 485 U.S. at 200.
[4]     *Rowley*, 485 U.S. at 206-207.

public education must be opened in a meaningful way, and the IEP must provide the opportunity for more than only "trivial advancement."[5]  While there is a need to defer to the expertise and exercise of judgment by school authorities, those authorities must be able to offer a cogent and responsive explanation for their decisions that shows the IEP is reasonably calculated to enable the child to make appropriate progress in light of his unique circumstances.[6]

Where procedural violations are asserted, a hearing officer may find that a child did not receive FAPE only if the procedural inadequacies impeded the child's right to FAPE, significantly impeded the parent's opportunity to participate in the decision-making process regarding the provision of FAPE, or caused the child a deprivation of educational benefits.[7]

A local educational agency ("LEA") may be required to reimburse parents for their tuition payment to a private school for the services unilaterally obtained by such parents for the student if the services offered by the LEA were inadequate or inappropriate, the services selected by the parents were appropriate under the Act, and equitable considerations support the parents' claim for reimbursement. *Florence County Sch. Dist. Four v. Carter*, 510 U.S. 7, 20 IDELR 532 (1993); *Sch. Comm. Of Burlington v. Dept. of Educ*., 471 U.S. 359, 103 LRP 37667 (1985).  In New York, the LEA has the burden of persuasion and the burden of production in the impartial hearing, except that a parent seeking tuition reimbursement for unilateral parental placement has the burden of persuasion and production on the appropriateness of the unilateral placement. N.Y. EDUC. Law Art. 89§ 4404(c).

---

[5]      *P. v. Newington Bd. of Educ*., 546 F.3d. 111 (2nd Cir. 2008).
[6]      *Endrew F. v. Douglas County Sch Dist. RE-1*, 137 S. Ct. 988 at 1002, 69 IDELR 174 (Mar. 22, 2017)
[7]      34 C.F.R. § 300.513(a)(2).

**Statute of Limitation**

8 NYCRR §200.5(j)(i) provides that "the request for an impartial due process hearing must be submitted within two years of the date the parent or agency knew or should have known about the alleged action that forms the basis of the complaint." Similarly, the <u>Southington</u> decision confirms that the statute of limitations accrues when the "parents know or have reason to know of the injury or event that is the basis for their claim."[8]  In <u>Southington,</u> it was determined that the statute of limitations was triggered by the date by which the parents knew that they were dissatisfied with the student's educational program resulting in their decision to unilaterally withdraw the student from that program and placement.[9]

    A.  **The Parent's Claims Through the End Of The 2018-2019 School Year Are Time-Barred.**

As outlined in the Findings of Fact, the Parent testified that her dissatisfaction with the IEPs and related services was fully developed by the 2018-2019 school year and that such dissatisfaction alongside the recommendations from her friend informed her decision to pull her son out of the public school and find a better school for him which eventually led her to locate the Private School.  The 2018-19 school year ended on June 26, 2019, and the Parent's due process complaint related to those claims was filed on June 29, 2021.  The Parent did not assert any of the applicable defenses and, therefore, I find that the 2-year Statute of Limitations applies to all claims before June 26, 2021.

---

[8]    334 F.3d 217 at 219-224.
[9]    <u>Id.</u>

Case 1:23-cv-02966-ALC-SN   Document 1-1   Filed 04/07/23   Page 13 of 29
Hearing Officer's Findings of Fact and Decision
Case No. 209151

B.  **The DOE Failed to Provide The Student With A FAPE During 2021-22 School Years By Failing to Properly Evaluate the Student and Create An Appropriate IEP.**

N.Y. Educ. Law §4404(c)(1) places the burden of proving that an IEP is appropriate and provides a qualified disabled Student with a FAPE solely on the local education agency.   It appears that the IEP relied on by the DOE in demonstrating it provided a FAPE, is flawed in that it is based on inadequate evaluation(s). Under the IDEA, a reevaluation of a child with a disability must occur when conditions warrant or if the parent or teacher requests a reevaluation.[10]

As outlined in the Findings of Fact, the DOE relied on the Parent's observation and objections or lack thereof to inform its decision not to add VES to the Student's 2021-22 IEP. The Parent's expert, however, underscored the significance and interconnection of the Student's visual impairment to his ability to make meaningful progress under any program in light of his other impairments.  In addition, I was persuaded by the testimony that cortical impairment is a common comorbidity to cerebral palsy and, therefore, the Student's cerebral palsy diagnosis should have prompted the DOE to regularly and thoroughly evaluate the Student's vision deficits and related needs in structuring an appropriate IEP and related services.  Having not adequately recognized, evaluated, and addressed this crucial deficit, the IEP was inadequate and supported the Parent's claim regarding the denial of FAPE for the 2021-22 school year.

In contrast, the Student's experience at the Private School confirmed that notwithstanding the limitations of his multiple disabilities, the Student was capable of achieving greater progress

---

[10]     34 C.F.R §300.303(b)(2); 8 NYCRR §200.4(b)(4).

and once his vision impairment was properly diagnosed and incorporated into his program, he made meaningful progress under a more comprehensive and appropriately tailored educational program and suite of related services.  While the Director admitted that the Student would never be truly independent, she opined that he should be much further along than where he is currently, and his advanced age will be it difficult to ameliorate the existing delays caused by the DOE's failure to properly address the Student's vision impairment.

To address the need to remediate the DOE's failure to incorporate VES into the Student's program, the Parent would like the Student to remain at the Private School until he turns 25; notwithstanding the Director's testimony that it is more likely than not that the Student will need 3 or 4 years additional beyond that to achieve an appropriate level of independence. The DOE believes that the award of extended eligibility is premature in light of the Student's possible legal entitlement for extended eligibility through age 23.  I, however, believe the facts support the Student's entitlement to significant remediation and should remain at the Private School under extended eligibility through age 25 based on the VES claim alone.

I find that the Parent's other claims related to the 2021-22 school year are either speculative school (placement and other related services concerns) or not supported by the Findings of Fact (Music Therapy).

### C.  **The Parents' Unilateral Placement of the Student at the Private School for the 2020-21 School Year was Reasonable**.

Parents seeking reimbursement "bear the burden of demonstrating that their private placement was appropriate, even if the IEP was inappropriate." [11]  The Parent, however, needs

---

[11]     *Gagliardo*, at 112; *See M.S. v. Bd. Of Educ.*, 231 F.3d 96, 104 (2d Cir. 2000)

"only demonstrate that the placement provides educational instruction specifically designed to meet the unique needs of a handicapped child, supported by such services as are necessary to permit the child to benefit from instructions.[12]

The Private School meets this burden as it provides the Student with the requisite level of specialized support based on his unique needs in terms of a highly structured but functional-based program with a small teacher-student ratio and a well-matched peer group.  Both the school reports and the Parents' observation note the Student's progress since enrolling at the Private School.  I find that the evidence supports that the Student is obtaining educational benefits arising from an educational program that focuses on his specific educational and social needs.

### D.  Equitable Considerations Favor the Parents

Equitable considerations are relevant in determining relief "because the authority to grant reimbursement [under the IDEA] is discretionary." Frank G., 459 F.3d at 363-64(*quoting,* Burlington, 471 U.S. at 374).  In balancing the equities, I find they favor the Parent who reasonably participated in all aspects of the educational process and complied with all the procedural requirements.

### DECISION

Based on a review of the record and the facts mentioned above, I find that the DOE failed to provide the Student with a FAPE for the noted school year and that the Parent is entitled to be

---

[12]    *C.B. v. Garden Grove Unified Sch. Dist.,* 635 F. 3d 1155, 1159 (9th Cir. 2011) quoting *Frank G. Bd. of Educ.,* 459 F.3d 356, 365 (2d Cir. 2006). *See also* 20 U.S.C. § 1401[29]; 34 CFR 300.39[a][1]; Educ. Law § 4401[1]; and 8 NYCRR 200.1.

Hearing Officer's Findings of Fact and Decision

Case NO. 209151

reimbursed for the tuition, special transportation, and related services costs at the Private School

as requested in the DPC.  In addition, I am granting the Parent's request that based on extended

eligibility, the Student is entitled to remain at the Private School at public expense through the

age of 25.

SO ORDERED

DATE:  September 5, 2022


*Keila Tennent*

_____

KEILA TENNENT, IMPARTIAL HEARING OFFICER



**NOTICE OF RIGHT TO APPEAL**

Within 40 days of the date of this decision, the parent and/or the **Public School District** has a right to appeal the decision to a State Review Officer (SRO) of the New York State Education Department under section 4404 of the Education Law and the Individuals with Disabilities Education Act.

If either party plans to appeal the decision, a notice of intention to seek review shall be personally served upon the opposing party no later than 25 days after the date of the decision sought to be reviewed.

An appealing party's request for review shall be personally served upon the opposing party within 40 days from the date of the decision sought to be reviewed.  An appealing party shall file the notice of intention to seek review, a notice of request for review, request for review, and proof of service with the Office of State Review of the State Education Department within two days after service of the request for review is complete. The rules of procedure for appeals before an SRO are found in Part 279 of the Regulations of the Commissioner of Education.  A copy of the rules in Part 279 and model forms are available at http://www.sro.nysed.gov.

## EXHIBITS

**DOE Exhibits**

| Exhibit # | Date | Description | Pages |
|-----------|------|-------------|-------|
| 1 | 3/11/21 | IEP | 47 |
| 2 | 6/16/21 | School Location Letter | 4 |
| 3 | 6/16/21 | Prior Written Notice | 8 |
| 4 | 9/3/21 | Events from SESIS | 31 |
| 5 | 3/11/21 | Attendance Page for 3/11/21 IEP Meeting | 1 |
| 6 | 3/11/21 | Minutes from 3/11/21 IEP Meeting | 6 |
| 7 | 11/13/2 | iBrain Quarterly Progress Report | 10 |
| 8 | 3/9/21 | iBrain Teacher and Related Services Reports | 46 |
| 9 | 1/11/21 | Consent for Use of Electronic Mail | 1 |
| 10 | 9/3/21 | SESIS Profile | 3 |
| 11 | 1/15/21 | Social History Update | 3 |
| 12 | 1/15/21 | Local Vocational Assessment | 3 |
| 13 | 5/25/20 | AT Report | 1 |
| 14 | 6/16/21 | Ten Day Notice | 2 |

| 15 | 12/20/18 | Social Service Update | 2 |
|----|----------|----------------------|---|
| 16 | 12/21/18 | Speech, Language, and Feeding Progress Report | 4 |
| 17 | 1/3/19 | Annual Educational Progress Report | 5 |
| 18 | 1/4/19 | OT Annual Progress Report | 4 |
| 19 | 1/4/19 | PT Annual Progress Report | 2 |
| 20 | 1/5/18 | PT Annual Progress Report | 2 |
| 21 | 1/14/18 | OT Annual Progress Report | 3 |
| 22 | 1/14/18 | Triennial Psychological Evaluation | 4 |
| 23 | Winter/Spring 2017 | Various Progress Reports | 8 |
| 24 | 2016-2017 | Various Progress Reports | 17 |
| 25 | March 2014 | Various Progress Reports | 15 |
| 26 | 6/16/21 | Email to parent with Prior Written Notice and School Location Letter | 1 |
| 27 | 3/7/22 | IEP | 58 |
| 28 | 2/17/22 | Classroom Observation | 2 |
| 29 | 2/28/22 | Psychoeducational Evaluation | 6 |

Hearing Officer's Findings of Fact and Decision

Case No. 209151

| PARENT EXHIBIT | DATE | DESCRIPTION | NUMBER OF PAGES |
|---|---|---|---|
| A | 06/29/2021 | Due Process Complaint – IH # 209151 | 8 |
| B | 07/06/2021 | Due Process Complaint – IH # 210749 | 7 |
| C | 08/03/2021 | Consolidation Order IH #s 210749 & 209151 | 4 |
| D | 04/28/2021 | SRO Decision No. 21-077 | 20 |
| E | 05/25/2020 | iBRAIN IEP | 35 |
| F | 06/02/2020 | Medical Accommodation & Transportation Forms | 18 |
| G | 06/19/2020 | iBRAIN Enrollment Contract | 7 |
| H | 06/26/2020 | Ten Day Notice | 1 |
| I | 07/07/2020 | NYC DOE Prior Written Notice & School Location Letter | 15 |
| J | 08/13/2020 | Transportation Agreement | 5 |
| K | 09/15/2020 | Transportation Affidavit | 1 |

Hearing Officer's Findings of Fact and Decision

Case N0. 209151

| | | | |
|---|---|---|---|
| L | 11/13/2020 | iBRAIN Quarterly Progress Report | 10 |
| M | 2020-2021 | iBRAIN Schedule | 1 |
| N | 03/09/2021 | iBRAIN IEP | 46 |
| O | 04/15/2021 | iBRAIN Quarterly Progress Report | 14 |
| P | 06/21/2021 | Ten Day Notice | 2 |
| Q | 07/02/2021 | iBRAIN Enrollment Contract | 16 |
| R | 07/15/2021 | NYC DOE Determination Report | 1 |
| S | 07/21/2021 | Transportation Agreement | 5 |
| T | 07/22/2021 | Transportation Affidavit | 1 |
| U | 08/18/2021 | Tuition Affidavit | 2 |
| V | 2021-2022 | iBRAIN Schedule | 1 |
| W | 09/10/2021 | Marina Perez Affidavit | 3 |
| X | 09/10/2021 | Tiffany Semm Affidavit | 5 |

| | | | |
|---|---|---|---|
| Y | 02/09/2007 | NYC DOE IEP | 15 |
| Z | 05/03/2007 | NYC DOE IEP | 18 |
| AA | 11/30/2007 | NYC DOE IEP | 15 |
| BB | 11/14/2008 | NYC DOE IEP | 23 |
| CC | 11/04/2008 | Comprehensive Psychological Evaluation | 13 |
| DD | 04/14/2009 | Speech, Language, and Feeding Evaluation | 15 |
| EE | 06/12/2009 | NYC DOE IEP | 15 |
| FF | 04/01/2010 | Physical Therapy Evaluation | 11 |
| GG | 04/30/2010 | NYC DOE IEP | 15 |
| HH | 05/06/2011 | NYC DOE IEP | 16 |
| II | 04/15/2013 | Annual Educational Progress Report | 3 |
| JJ | 04/30/2013 | Management and Therapy Prescription | 14 |
| KK | 03/03/2014 | Physical Therapy Annual Progress Report | 4 |

| LL | 03/05/2014 | Speech & Language Therapy Annual Progress Report | 5 |
|---|---|---|---|
| MM | 07/14/2014 | Child & Adolescent Health Examination Form | 3 |
| NN | 03/13/2015 | Triennial Psychological Evaluation | 4 |
| OO | 07/07/2015 | Child & Adolescent Health Examination Form | 2 |
| PP | 02/2016 | Occupational Therapy Annual Evaluation | 2 |
| QQ | 02/01/2016 | Speech & Language Annual Progress Report | 6 |
| RR | 02/12/2016 | Physical Therapy Annual Progress Report | 2 |
| SS | 01/06/2017 | Physical Therapy Annual Progress Report | 4 |
| TT | 01/24/2017 | Letter from Parent | 1 |
| UU | 04/03/2017 | Medical Accommodation Form | 2 |
| VV | 01/03/2018 | Triennial Psychological Evaluation | 4 |
| WW | 01/04/2018 | Occupational Therapy Annual Report | 3 |

| | | | |
|---|---|---|---|
| XX | 01/05/2018 | Physical Therapy Annual Progress Report | 2 |
| YY | 01/05/2018 | Speech & Language Annual Progress Report | 1 |
| ZZ | 12/21/2018 | Speech, Language, and Feeding Report | 4 |
| AAA | 01/03/2019 | Annual Educational Progress Report | 2 |
| BBB | 01/04/2019 | Occupational Therapy Annual Progress Report | 4 |
| CCC | 01/04/219 | Physical Therapy Annual Progress Report | 2 |
| DDD | 01/11/2019 | NYC DOE IEP | 25 |
| EEE | 01/19/2018 | NYC DOE IEP | 25 |
| FFF | 03/04/2016 | NYC DOE IEP | 21 |
| GGG | 03/25/2015 | NYC DOE IEP | 21 |
| HHH | 04/09/2014 | NYC DOE IEP | 19 |
| III | 05/04/2012 | NYC DOE IEP | 16 |
| JJJ | 05/01/2013 | NYC DOE IEP | 16 |

| | | | |
|---|---|---|---|
| KKK | 06/09/2017 | NYC DOE IEP | 23 |
| LLL | 05/27/2020 | NYC DOE IEP | 46 |

## L.V. v. NYC Department of Education, 03 Civ. 9917 (SDNY)

Parents of children with Individualized Education Programs who received or who may receive an order at the conclusion of an impartial hearing should read the attached notice about possible disclosure of information and documents about their children as part of a federal court litigation.

Translations in Spanish, Arabic, Bengali, Chinese, French, Haitian Creole, Korean, Russian, and Urdu are available on the DOE webpage at https://www.schools.nyc.gov/learning/special-education/help/impartial-hearings

**Notice of Potential Disclosure of Student Education Records**

**Please read this notice carefully**. This is a message about possible disclosure of documents or data that might contain information about your child, if your child has been classified as a student with a disability and has been or may be the subject of a final Impartial Hearing Order.

## I.      Nature of the Lawsuit

This lawsuit challenged the failure of the Department of Education ("DOE") of the City of New York to timely implement orders issued by impartial hearing officers in connection with impartial hearings held pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400, *et seq.* and N.Y. Education Law § 4401, *et seq.* In 2007, the parties entered into a Stipulation of Settlement (the "Stipulation") in which the DOE agreed to timely implement these orders.

In January 2021, the Court granted plaintiffs' motion for the appointment of a special master. On April 14, 2021, the Court entered an Order appointing David Irwin of Thru-Ed as the Special Master.  On May 14, 2021, the Court entered an Order detailing the duties and authority of the Special Master which include, among other things, the authority to review DOE's processes for implementing impartial hearing orders and to recommend to the Court improvements to enable DOE to timely implement orders a. Pursuant to this Order, the Special Master may have access to education records of students, upon DOE's compliance with the Family Education Rights and Privacy Act (20 U.S.C. § 1232g; 34 C.F.R. Part 99) ("FERPA").

## II.     Data Ordered to Be Disclosed

In order for the Special Master to perform his duties, the Court has directed the DOE to provide the Special Master (and employees and consultants at Thru-Ed) with access to records containing confidential student record information, including, but not limited to, documents submitted in the impartial hearing process, impartial hearing orders, data about compliance, and students' special education documents, such as individualized education programs, evaluations, authorizations, invoices, etc. The Special Master is required to keep any student documents and information confidential. No student-specific information will be shared with plaintiffs' counsel unless the student's parent specifically consents. If there is any student-specific information in the Special Master's reports to the Court, that information would not be made public.

The Special Master will use this information only for his work to review DOE's processes for implementing impartial hearing orders and to recommend to the Court improvements to enable DOE to timely implement orders.  The disclosure of this information <u>does not</u> affect any of your rights as a parent to seek special education services for your child.

## IV.     Objections to Disclosure

If you agree to the disclosure of this information to the Special Master, you do not need to do anything more.

If you do not want your child's information shared with the Special Master, you must object to this disclosure by submitting an objection to DOE's attorney, addressed to:

> Jeffrey S. Dantowitz
> NYC Law Department
> 100 Church Street, Room 2-121
> New York  NY  10007

or via email at LVObjection@law.nyc.gov.  Please reference the *LV v. DOE* lawsuit (Case No. 03-9917) when writing.  An Objection Form accompanies this Notice, though no written objection will be rejected if it is not submitted on this form.  If you object, no records containing you and your child's personally identifiable information or other FERPA-protected information will be provided to the Special Master, although nominal and incidental disclosure of your child's name may occur.  **Any objections must be received by December 3, 2021 or for impartial hearing orders issued after November 12, 2021, within 3 weeks of the issuance of the impartial hearing order**.

**If you would like more information about this notice, please contact the attorneys for plaintiffs**, **Rebecca Shore, of Advocates for Children of New York, Inc. at 646-532-6078.**

**OBJECTION TO DISCLOSURE OF RECORDS**
**LV v. DOE, 03 Civ. 9917 (SDNY)**

If you agree to the release of information about your child to the Special Master appointed in *L.V. v. DOE*, you do not need to complete this form.

If you object to the release of information about your child to the Special Master appointed in *L.V. v. DOE*, please compete and return this form to:

> Jeffrey S. Dantowitz
> NYC Law Department
> 100 Church Street, Room 2-121
> New York, NY  10007

or via email at LVObjection@law.nyc.gov

Child's name: _____

Name: _____

Address: _____

Impartial Hearing Order Case # (if known): _____

Date of Order (if known): _____

> If you object to the release of your confidential information, please check the line below:
>
> _____   I do not agree to have my confidential records disclosed to the Special Master in *L.V. v. DOE*.

_____        _____
Date                                             Please sign here

If you object to the release of information, your objection must be received by December 3, 2021 or, for impartial hearing orders issued after November 12, 2021, within 3 weeks of the issuance of the impartial hearing order.

        \*   \*   \*   If you do not notify the DOE of your objections to the documents being released, you child's information will be provided to the Special Master appointed in *LV v. DOE*, 99 Civ. 9917 (SDNY) and/or consultants and employees of Thru-Ed.  The information will remain confidential and the disclosure of this information will not affect any of your rights to seek special education services for your child.

| |
|---|
| للاطلاع على هذا المستند باللغة العربية، قُم بزيارة الموقع الإلكتروني https://www.schools.nyc.gov/learning/special-education/help/impartial-hearings |
| YgÄs Ầà Ä Àà ná^l á̀ https://www.schools.nyc.gov/learning/special-education/help/impartial-hearings ná^f̂ |
| 若要以中文查看，請上網到 https://www.schools.nyc.gov/learning/special-education/help/impartial-hearings |
| Pour consulter ce texte en français, allez sur https://www.schools.nyc.gov/learning/special-education/help/impartial-hearings |
| Pou wè tèks sa a an kreyòl ayisyen, ale sou https://www.schools.nyc.gov/learning/special-education/help/impartial-hearings |
| 본 문서를 한국어로 보시려면 다음 웹사이트를 이용하십시오: https://www.schools.nyc.gov/learning/special-education/help/impartial-hearings |
| Для просмотра документа на русском языке посетите https://www.schools.nyc.gov/learning/special-education/help/impartial-hearings |
| Para ver este contenido en español, visite https://www.schools.nyc.gov/learning/special-education/help/impartial-hearings |
| اس کو اردو میں دیکھنے کے لیے https://www.schools.nyc.gov/learning/special-education/help/impartial-hearings پر جائں |