# EXHIBIT 2



**THE STATE EDUCATION DEPARTMENT** / THE UNIVERSITY OF THE STATE OF NEW YORK

OFFICE OF STATE REVIEW, 80 Wolf Road, Suite 203, Albany, New York 12205-2643
Tel 518-485-9373
Fax 518-485-9377



December 8, 2022

Peter G. Albert, Esq.
Brain Injury Rights Group, Ltd.
300 East 95th Street, Suite 130
New York, NY   10128

> **Re:** Application of the **NEW YORK CITY DEPARTMENT OF EDUCATION** for review of a determination of a hearing officer relating to the provision of educational services to a student with a disability

Dear Counselor:

Enclosed is a copy of Decision No. 22-139 of the State Review Officer (IHO Case No. 209151) in the above-entitled matter.

The original has been sent today directly to the New York City Department of Education to the attention of Liz Vladeck, General Counsel.

Please note that in accordance with Federal and State law, a decision of the State Review Officer is final, unless a Federal or State court reviews it. In order to obtain judicial review, a parent or board of education must begin a Federal action in the appropriate United States District Court or an Article 4 proceeding of the Civil Practice Law and Rules in local State Supreme Court. The courts have held that unless a party is challenging the validity of a State statute or regulation, it is not necessary or appropriate to name the State Review Officer or the Commissioner of Education as a party in such lawsuits. When such lawsuits have commenced, the Office of State Review would appreciate receiving notification and a courtesy copy of the moving papers by the parties.

Sincerely,

/s/

Cynthia DiVirgilio
Legal Assistant 2

Enclosure

cc:   Liz Vladeck, Esq.



# The University of the State of New York

## The State Education Department
### State Review Officer
www.sro.nysed.gov

No. 22-139

Application of the **NEW YORK CITY DEPARTMENT OF EDUCATION** for review of a determination of a hearing officer relating to the provision of educational services to a student with a disability

**Appearances:**

Liz Vladeck, General Counsel, attorneys for petitioner, by Abigail Hoglund-Shen, Esq.

Brain Injury Rights Group, Ltd., attorneys for respondent, by John Henry Olthoff, Esq.

## DECISION

### I. Introduction

This proceeding arises under the Individuals with Disabilities Education Act (IDEA) (20 U.S.C. §§ 1400-1482) and Article 89 of the New York State Education Law. Petitioner (the district) appeals from the decision of an impartial hearing officer (IHO) which granted the respondent's (parent's) request for compensatory educational services in the form of extended eligibility for the parent's daughter under the IDEA. The appeal must be sustained.

### II. Overview—Administrative Procedures

When a student in New York is eligible for special education services, the IDEA calls for the creation of an individualized education program (IEP), which is delegated to a local Committee on Special Education (CSE) that includes, but is not limited to, parents, teachers, a school psychologist, and a district representative (Educ. Law § 4402; see 20 U.S.C. § 1414[d][1][A]-[B]; 34 CFR 300.320, 300.321; 8 NYCRR 200.3, 200.4[d][2]). If disputes occur between parents and school districts, incorporated among the procedural protections is the opportunity to engage in mediation, present State complaints, and initiate an impartial due process hearing (20 U.S.C. §§ 1221e-3, 1415[e]-[f]; Educ. Law § 4404[1]; 34 CFR 300.151-300.152, 300.506, 300.511; 8 NYCRR 200.5[h]-[*l*]).

New York State has implemented a two-tiered system of administrative review to address disputed matters between parents and school districts regarding "any matter relating to the identification, evaluation or educational placement of a student with a disability, or a student suspected of having a disability, or the provision of a free appropriate public education to such student" (8 NYCRR 200.5[i][1]; see 20 U.S.C. § 1415[b][6]-[7]; 34 CFR 300.503[a][1]-[2], 300.507[a][1]). First, after an opportunity to engage in a resolution process, the parties appear at an impartial hearing conducted at the local level before an IHO (Educ. Law § 4404[1][a]; 8 NYCRR 200.5[j]). An IHO typically conducts a trial-type hearing regarding the matters in dispute in which the parties have the right to be accompanied and advised by counsel and certain other individuals with special knowledge or training; present evidence and confront, cross-examine, and compel the attendance of witnesses; prohibit the introduction of any evidence at the hearing that has not been disclosed five business days before the hearing; and obtain a verbatim record of the proceeding (20 U.S.C. § 1415[f][2][A], [h][1]-[3]; 34 CFR 300.512[a][1]-[4]; 8 NYCRR 200.5[j][3][v], [vii], [xii]). The IHO must render and transmit a final written decision in the matter to the parties not later than 45 days after the expiration period or adjusted period for the resolution process (34 CFR 300.510[b][2], [c], 300.515[a]; 8 NYCRR 200.5[j][5]). A party may seek a specific extension of time of the 45-day timeline, which the IHO may grant in accordance with State and federal regulations (34 CFR 300.515[c]; 8 NYCRR 200.5[j][5]). The decision of the IHO is binding upon both parties unless appealed (Educ. Law § 4404[1]).

A party aggrieved by the decision of an IHO may subsequently appeal to a State Review Officer (SRO) (Educ. Law § 4404[2]; see 20 U.S.C. § 1415[g][1]; 34 CFR 300.514[b][1]; 8 NYCRR 200.5[k]). The appealing party or parties must identify the findings, conclusions, and orders of the IHO with which they disagree and indicate the relief that they would like the SRO to grant (8 NYCRR 279.4[a]). The opposing party is entitled to respond to an appeal or cross-appeal in an answer (8 NYCRR 279.5). The SRO conducts an impartial review of the IHO's findings, conclusions, and decision and is required to examine the entire hearing record; ensure that the procedures at the hearing were consistent with the requirements of due process; seek additional evidence if necessary; and render an independent decision based upon the hearing record (34 CFR 300.514[b][2]; 8 NYCRR 279.12[a]). The SRO must ensure that a final decision is reached in the review and that a copy of the decision is mailed to each of the parties not later than 30 days after the receipt of a request for a review, except that a party may seek a specific extension of time of the 30-day timeline, which the SRO may grant in accordance with State and federal regulations (34 CFR 300.515[b], [c]; 8 NYCRR 200.5[k][2]).

### III. Facts and Procedural History

The student in this case has been the subject of a prior State-level administrative appeal (Application of a Student with a Disability, Appeal No. 22-077). Accordingly, the parties' familiarity with the student's educational history is presumed and, as such, this decision will only refer to those facts essential to explain the resolution of the limited issue raised in the district's appeal. Briefly, according to the parent, the student—who turned 19 years old during the 2021-22 school year—attended ADAPT, a State-approved, nonpublic school from the 2007-08 school year through the 2018-19 school year (Parent Ex. A at p. 2). The student has received diagnoses of quadriplegic cerebral palsy, muscle hypotonia, developmental delay, coxa valga, dystonia, chorea, impaired mobility, microcephaly, and intellectual disability (id.).

At a meeting on March 11, 2021, the CSE developed an IEP for the student for the 2021-22 school year (District Ex. 1).  The CSE classified the student with multiple disabilities and recommended that he attend a 6:1+1 special class in a district specialized school on a 12-month basis (id. at p. 39). The CSE recommended that the student receive the following related services: occupational therapy (OT), individually, five times a week for 60 minutes; physical therapy (PT), individually, five times a week for 60 minutes; speech-language therapy, individually, five times a week for 60 minutes; and assistive technology services, individually, once a week for 60 minutes (id. at p. 40).  The CSE also recommended parent counseling and training; a paraprofessional for health, safety, ambulation, and feeding; an assistive technology device; two-person transfer training; seizure safety training; and feeding safety precautions (id. at p. 39-40).

In a letter dated June 21, 2021, the parent notified the district of her intention to place the student at the International Institute for the Brain (iBrain) and to seek public funding for the placement (Parent Ex. P).  The parent signed an enrollment contract on July 1, 2021 for the student's attendance at iBrain for the 2021-22 extended school year (Parent Ex. Q).  The student has attended iBrain since the 2019-20 school year (Parent Ex. B at p. 3).

## A. Due Process Complaint Notices

By due process complaint notice dated June 29, 2021, the parent alleged that the district procedurally and substantively denied the student a free appropriate education (FAPE) from the 2007-2008 school year through the 2018-2019 school year (Parent Ex. A at p. 2).  The parent contended that while the student attended ADAPT, the district failed to provide him with a FAPE and caused substantial regression in skills and abilities (id.). The parent also asserted that the district failed to develop educational programs for the student that would allow him to make educational progress in light of his circumstances (id.).

Specifically, the parent alleged that the district failed to classify the student as a student with a traumatic brain injury, failed to develop appropriate annual goals for the student, and failed to conduct appropriate, timely, and comprehensive evaluations, including a neuropsychological examination and an assistive technology examination (Parent Ex. A at p. 4-5).  The parent also contended that she was denied her right to meaningfully participate in the student's education due to the failure of the district to conduct appropriate evaluations (id. at 5).

The parent also alleged that the CSE failed to recommend and provide appropriate related services to the student at a frequency and duration adequate to meet his needs (Parent Ex. A at p. 5).  The parent contended that the CSE failed to recommend assistive technology as a related service despite the student being nonverbal (id.). The parent further asserted that the CSE failed to recommend vision therapy for the student or a 1:1 health paraprofessional to assist him (id.). The parent also alleged that the district failed to address the student's highly intensive management needs and his academic needs (id. at p. 6).  Additionally, the parent claimed that the district failed to include appropriate present levels of performance on the student's IEP and failed to recommend an appropriate educational placement for him (id.).

As relief, the parent requested that the IHO order the district to conduct a neuropsychological evaluation and an assistive technology evaluation of the student (Parent Ex. A at p. 7).  The parent requested findings that the district denied the student a FAPE from the 2007-

2008 school year through the 2018-19 school year, that iBrain was an appropriate unilateral placement for the student for the 2021-22 school year, and that equitable considerations favored the parent's request for relief (id.). The parent further requested that the district be ordered to fund compensatory education services in the form of eleven years of tuition and related services at iBrain and that the student be awarded extended eligibility for special education services (id.). Finally, the parent requested that the CSE be ordered to reconvene and amend the student's IEP to reflect the components of his educational program at iBrain (id.).

In a subsequent due process notice, dated July 6, 2021, the parent alleged that the district denied the student a FAPE for the 2021-22 school year (Parent Ex. B at p. 1). The parent contended that although the student had been diagnosed with cortical vision impairment and iBrain provided him with a comprehensive vision assessment and recommended vision therapy services for him, the district failed to recommend vision services in the March 2021 IEP developed for the 2021-22 school year (id. at p. 4). The parent asserted that the CSE indicated that it could not add vision services to the student's IEP without an updated evaluation despite being presented with a vision assessment for the student at the March 2021 CSE meeting and failed to adopt iBrain's recommendation for vision services (id.). The parent also averred that the district failed to recommend music therapy for the student as he had made educational progress due to his receipt of music therapy at iBrain (id.).

Additionally, the parent contended that the district failed to recommend a school location where the March 2021 IEP could be implemented because it failed to recommend an extended school day which would be capable of accommodating the number of hours of related services that were appropriate for the student (Parent Ex. B at p. 4-5). The parent asserted that the district failed to provide her with prior written notice and a school location letter which impeded her ability to visit the assigned school (id. at p. 5).

As relief, the parent sought a determination that the district denied the student a FAPE for the 2021-22 school year and that iBrain was an appropriate unilateral placement for the student (Parent Ex. B at p. 5). The parent also requested that the district be ordered to pay iBrain directly for the cost of the student's tuition at iBrain for the 2021-22 extended school year including related services, a 1:1 paraprofessional, and a nurse (id. at p. 5). Additionally, the parent requested that the district provide all assistive technology and augmented assistive communication devices as needed, as well as reimbursement or funding for special transportation with limited travel time and a transportation paraprofessional, nurse, or porter, as required (id. at p. 6).

Pursuant to a request from the parent, the IHO consolidated the due process complaint notices by an order of consolidation dated August 3, 2021.

### B. Impartial Hearing Officer Decision

After the parties appeared for a prehearing conference on July 29, 2021, a status conference on August 12, 2021, and a pendency hearing on August 20, 2021, an impartial hearing commenced on September 17, 2021 and concluded on June 3, 2022 after eight days of hearings (Tr. pp. 1-408).[1] By a decision dated October 19, 2022, the IHO found that all claims alleged by the parent

_____

[1] In an August 23, 2021 decision on pendency, the IHO found that the student's placement for the pendency of

4

for the 2007-08 through 2018-19 school years were barred by the statute of limitations (IHO Decision at p. 11). The IHO determined that the parent's dissatisfaction with the student's IEPs and the related services recommended for him was "fully developed" by the 2018-2019 school year and that "such dissatisfaction alongside the recommendations from her friend informed her decision to pull her son out of the public school and find a better school for him which eventually led her to locate [iBrain]" (id.). The IHO noted that the parent had not asserted any exceptions to the two-year statute of limitations applicable to IDEA claims, that the 2018-19 school year ended on June 26, 2019, and that the parent's due process complaint notice was not filed until June 29, 2021; accordingly, the IHO determined that the parent's claims for the 2018-19 school year and the preceding school years were barred by the statute of limitations and the only remaining timely claims related to the 2021-22 school year (id.)

Turning to the 2021-22 school year and the issue of FAPE, the IHO determined that the March 2021 IEP was flawed because it was based on an inadequate evaluation of the student's vision needs and failed to recommend adequate services to address the student's visual impairment (IHO Decision at p. 12). More specifically, the IHO found that the CSE improperly relied on the parent's view of the student's vision needs in reaching its decision not to recommend vision education services as a related service for the student (id.). The IHO noted that the parent's expert, underscored "the significance and interconnection of the student's visual impairment to his ability to make meaningful progress under any program in light of his other impairments" (id.). The IHO also noted evidence in the hearing record which posited that cortical impairment was a common comorbidity with cerebral palsy and the student's cerebral palsy diagnosis should have prompted the district "to regularly and thoroughly evaluate the [s]tudent's vision deficits and related needs in structuring an appropriate IEP and related services" (id.). The IHO found that because the district had "not adequately recognized, evaluated, and addressed this crucial deficit, the IEP was inadequate and supported the [p]arent's claim regarding the denial of FAPE for the 2021-22 school year" (id.).

With respect to relief, the IHO credited the testimony of the director of iBrain that the student "should be much further along than where he [wa]s currently," and given his "advanced age," it would be difficult for him "to ameliorate the existing delays caused by the [district's] failure to properly address [his] vision impairment" (IHO Decision at p. 13). The IHO noted that the parent would like the student to remain at iBrain until he turned 25 while the director of iBrain testified that the student would need an additional three or four years beyond that to achieve an appropriate level of independence (id.). The IHO found that the evidence in the hearing record supported the student's entitlement to "significant remediation" and therefore the student "should remain at [iBrain] under extended eligibility through age 25 based on the [vision education services] claim alone" (id.) The IHO further found that the parent's claims related to the school placement and other related services concerns were speculative and that the music therapy claim was not supported by the hearing record (id.).

The IHO also determined that iBrain was an appropriate unilateral placement for the student and that equitable considerations favored the parent (IHO Decision at pp. 13-14).

---

this proceeding was established by the decision in Application of a Student with a Disability, Appeal No. 22-077, which included tuition and transportation for the student's program at iBrain (IHO Pendency Decision).

Accordingly, as relief for the district's denial of a FAPE to the student for the 2020-21 school year, the IHO ordered the district to reimburse the parent for the tuition, special transportation, and related services costs at iBrain and, additionally, granted the parent's request "that based on extended eligibility, the [s]tudent is entitled to remain at [iBrain] at public expense through the age of 25" (id. at pp. 14-15).

## IV. Appeal for State-Level Review

The district appeals. The sole issue raised by the district on appeal is that the IHO abused her discretion by awarding extended eligibility for four years to the student as relief based on a denial of FAPE, which was limited to the 2021-22 school year and did not involve a gross violation of the IDEA.[2] Specifically, the district argues that by granting an award of extended eligibility, the IHO effectively circumvented her own finding that the parent's claims arising from the 2007-08 through 2018-19 school years were time-barred and subject to dismissal. The district contends that because the parent sought extended eligibility as relief for the dismissed claims contained in the June 29, 2021 due process complaint notice, the dismissal of the claims contained in that due process complaint notice should have precluded the IHO from granting the relief the parent had sought for those claims.

The district argues that while extended eligibility may, in some limited circumstances, be appropriate to remediate a gross violation of the IDEA, the IHO did not determine that a gross violation occurred with respect to the denial of FAPE that was found for the 2021-22 school year. The district asserts that the IHO's decision instead centered on the lack of vision education services in the March 2021 IEP. According to the district, the absence of a recommendation for this one related service was not sufficient to constitute a gross violation of the IDEA necessitating four years of extended eligibility for special education services.

The district further asserts that the student's attendance at iBrain for the 2021-22 school year negated any shortcomings in the March 2021 IEP and compensated the student for the denial of FAPE. The district contends that the IHO ordered the district to fund the student's attendance at iBrain for the 2021-22 school year to remedy the district's failure to develop an appropriate program for the student in the March 2021 IEP, and an additional award of four years of extended eligibility during which the student would continue to attend iBrain was "incongruous with the claim upon which she was to decide," namely the appropriate remedy for a denial of FAPE based on claims solely related to the 2021-22 school year as all claims based on prior school years were dismissed by the IHO because they were not brought within the applicable statute of limitations.

In an answer, the parent asserts that the IHO correctly awarded the student extended eligibility for special education services. According to the parent, in determining compensatory

---

[2] . Neither party has appealed or cross-appealed from the IHO's dismissal of the parent's claims for the 2007-08 school year through the 2018-19 school year on statute of limitations grounds, her finding of a denial of FAPE for the 2021-22 school year, or her order granting reimbursement to the parent for the cost of the student's tuition, related services, and transportation at iBrain for the 2021-22 school year. Accordingly, those aspects of the IHO's decision have become final and binding and they will not be reviewed on appeal (34 CFR 300.514[a]; 8 NYCRR 200.5[j][5][v]; see M.Z. v. New York City Dep't of Educ., 2013 WL 1314992, at *6-*7, *10 [S.D.N.Y. Mar. 21, 2013]).

education, the IHO was permitted to consider events that occurred outside of the statute of limitations. The parent further contends that the district's persistent failures constituted a gross violation under the IDEA. The parent alleges that she had no way of knowing that the student was capable of more progress than he had made in a district placement until she had him assessed by independent evaluators and that the multiple failures by the district to recommend an appropriate program and placement for the student throughout his attendance at a district placement warranted the four years of extended eligibility awarded by the IHO.

## V. Discussion—Extended Age-Eligibility as Relief

As discussed above, the district's main contention on appeal is that, given the award of direct tuition funding to the student for the denial of FAPE related to the 2021-22 school year and the dismissal of all claims related to the 2007-08 through 2018-19 school years for which relief in the form of extended eligibility was sought by the parent, the IHO erred by awarding four years of extended eligibility for special education services as additional relief.

Compensatory education is an equitable remedy that is tailored to meet the unique circumstances of each case (Wenger v. Canastota, 979 F. Supp. 147 [N.D.N.Y. 1997]). Compensatory education may be awarded to a student with a disability who no longer meets the eligibility criteria for receiving instruction under the IDEA (see 20 U.S.C. §§ 1401[3], 1412[a][1][B]; Educ. Law §§ 3202[1], 4401[1], 4402[5]). The Second Circuit has held that compensatory education may be awarded to students who are ineligible for services under the IDEA by reason of age or graduation only if the district committed a gross violation of the IDEA which resulted in the denial of, or exclusion from, educational services for a substantial period of time (see Doe v. E. Lyme Bd. of Educ., 790 F.3d 440, 456 n.15 [2d Cir. 2015]; French v. New York State Dep't of Educ., 476 Fed. App'x 468, 471 [2d Cir. Nov. 3, 2011]; Somoza v. New York City Dep't of Educ., 538 F.3d 106, 109 n.2, 113 n.6 [2d Cir. 2008]; Mrs. C. v. Wheaton, 916 F.2d 69, 75-76 [2d Cir. 1990]; Burr v. Ambach, 863 F.2d 1071, 1078-79 [2d Cir. 1988], aff'd on reconsideration sub nom., Burr v. Sobol, 888 F.2d 258 [2d Cir. 1989]; Cosgrove v. Bd. of Educ. of Niskayuna Cent. Sch. Dist., 175 F. Supp. 2d 375, 387 [N.D.N.Y. 2001]).

The Second Circuit has described compensatory education as "prospective equitable relief, requiring a school district to fund education beyond the expiration of a child's eligibility as a remedy for any earlier deprivations in the child's education" (Somoza, 538 F.3d at 109 n.2 [emphasis added]; see French, 476 Fed. App'x at 471 [noting that "[a] disabled student who has attained the age of 21 is generally no longer eligible to receive state educational services under the IDEA"]). State law does not require school districts to provide students with a free public education past the age of 21 (Educ. Law § 3202[1]), yet compensatory education may be awarded to a student with a disability who no longer meets the eligibility criteria for receiving instruction under the IDEA (see 20 U.S.C. §§ 1401[3], 1412[a][1][B]; Educ. Law §§ 3202[1], 4401[1], 4402[5]).

Having reviewed some relevant authority on this type of remedy, a distinction exists between an equitable award of compensatory education in the form of educational programs or services, which a student may receive after his or her eligibility for special education has expired at a district's expense, and an award of extended eligibility, which extends the district's statutory obligations to a student, including the obligation to conduct a CSE meeting and develop an IEP

for the student on an annual basis (Ferren C. v. Sch. Dist. of Phila., 595 F. Supp. 2d 566, 576 [E.D. Pa. 2009] [acknowledging the distinction between the expiration of the statutory right, including the right to an IEP, and the access to equitable relief], aff'd, 612 F.3d 712 [3d Cir. 2010]; Burr, 863 F.2d at 1078 [same]; Letter to Riffel, 34 IDELR 292 [OSEP 2000] [noting that a right to compensatory education as an equitable remedy to address a denial of FAPE is independent from the right to FAPE generally, which latter right terminates upon certain occurrences]).[3]

This type of relief, if interpreted broadly to include an extension of the procedural due process entitlements set forth in the IDEA, including pendency, could result in many more years of eligibility than intended (see Application of a Student with a Disability, Appeal No. 19-038; Application of a Student with a Disability, Appeal No. 17-021).[4] However, there is a difference between basing relief "on considerations enunciated under a legislated obligation and actually invoking the statutory provision" (Cosgrove, 175 F Supp 2d at 389). Thus, compensatory education is not a full extension of the IDEA itself and does not, for example, continue a student's stay-put rights (id. at 390).[5] This logic would appear to apply further to preclude the parent's access to the due process protections of the IDEA to challenge IEPs developed by a CSE during the extension of eligibility. Otherwise, the extension of eligibility could result in potentially perpetual challenges to IEPs developed during the period of extension and additional awards of compensatory education. In other words, the extension of the student's eligibility must be viewed as an election of remedies by the parent as to the student's educational placement, subject only to further modification in judicial review, and the parent must be viewed as having assumed the risk that unforeseen future events could render the relief undesirable. As such, the parent would not be allowed to return to the due process hearing system to allege new faults by the district during the period of the student's extended eligibility.[6]

Taking these limits into account, an award of extended eligibility may be an appropriate form of relief in a case where the district committed a gross violation of the IDEA (see Cosgrove, 175 F Supp 2d at 387). Having examined what aspects of special education eligibility such a

---

[3] At least one district court has found it improper to award extended eligibility under the IDEA as a component of compensatory education; however, in that case the IHO had ordered the district to award the student a diploma making an award of extended eligibility redundant (see Dracut Sch. Comm. v. Bur. of Special Educ. Appeals, 737 F. Supp. 2d 35, 53-55 [D. Mass. 2010]).

[4] The Third Circuit in Ferren C. acknowledged concerns that, by extending the district's obligations to provide an IEP beyond the student's 21st birthday, the district could be subjected to ongoing litigation "as challenges are made to the adequacy of the[] IEPs" developed after the student's 21st birthday" (612 F.3d 712, 720 [3d Cir. 2010]).

[5] The Court in Cosgrove also observed that, under the auspices of an extended eligibility award that "extend[ed] the IDEA in toto," a district might have incentive to utilize the CSE procedures to escape liability for nonpublic school tuition by recommending a placement on an IEP other than the nonpublic school preferred by the parent (Cosgrove, 175 F Supp 2d at 390).

[6] Overall, the continuation of the types of programs and services available under the IDEA to a student over the age of 21 may become fraught with challenges related to the student's age, not the least of which is that the student will have exceeded the age of compulsory school-age attendance under State law (see N.Y. Educ. Law § 3205[1][a] [requiring students aged 6 through 16 to attend "full time instruction"]; see also N.Y. Educ. Law § 3202[1] [entitling students aged 5 through 21, who have "not received a high school diploma," to attend public schools]).

remedy should not include, it remains to be examined what aspects of a FAPE may be extended. Where an extension of eligibility has been awarded, the components of such relief may include: the district's obligations to evaluate the student and convene CSE at least annually to develop IEPs for the student (Ferren C., 595 F. Supp. 2d at 581; Millay v. Surry Sch. Dep't, 2011 WL 1122132, at *16 [D. Me. Mar. 24, 2011], report and recommendation adopted, 2011 WL 1989923 [D. Me. May 23, 2011]); and/or to provide access to credit-bearing instruction and a chance to earn a diploma (M.W. v. New York City Dep't of Educ., 2015 WL 5025368, at *5 [S.D.N.Y. Aug. 25, 2015]).

Moreover, some courts have held that compensatory education is not available as an additional or alternative remedy when reimbursement for the costs of a unilateral placement is also at issue for the same time period (see D.F. v. Collingswood Borough Bd. of Educ., 694 F.3d 488, 498 [3rd Cir. 2012] [holding that "[b]ecause compensatory education is at issue only when tuition reimbursement is not, it is implicated only where parents could not afford to 'front' the costs of a child's education"]; P.P. v. West Chester Area Sch. Dist., 585 F.3d 727, 739 [3rd Cir. 2009] [holding that "compensatory education is not an available remedy when a student has been unilaterally enrolled in private school"]; but see V.W. v. New York City Dep't of Educ., 2022 WL 3448096, at *5–7 [S.D.N.Y. Aug. 17, 2022] [finding that awards of tuition reimbursement and compensatory education are not mutually exclusive and that an award of "both education placement and additional services may be necessary to provide a particular student with a FAPE"]; I.T. v. Dep't of Educ., State of Hawaii, 2013 WL 6665459, at *7-*8 [D. Haw. Dec. 17, 2013] [finding that the student was entitled to compensatory education for services the student received at the nonpublic school]). The Second Circuit Court of Appeals has not directly addressed this question and, generally, appears to have adopted a broader reading of the purposes of compensatory education than the Third Circuit (compare P.P., 585 F.3d at 739 [finding that "[t]he right to compensatory education arises not from the denial of an appropriate IEP, but from the denial of appropriate education"], with Doe v. E. Lyme, 790 F.3d 440, 456-57 [2d Cir. 2015] [treating compensatory education as an available equitable remedy for a denial of a FAPE so as to effectuate the purposes of the IDEA and put a student in the same position he or she would have been in had the denial of a FAPE not occurred]). Accordingly, unlike the Third Circuit, the Second Circuit's approach to compensatory education may leave room for unique circumstances where an award of compensatory education may be warranted where, for example, a student is unilaterally placed but the parent's request for tuition reimbursement is denied under a Burlington/Carter analysis (see Application of a Student with a Disability, Appeal No. 16-050), or where a student is unilaterally placed but additional related services are required in order for the placement to provide the student with a FAPE (see V.W., 2022 WL 3448096, at *5–7). However, if permitted, it would be the rare case where a unilateral placement is deemed to have provided a student with instruction specially designed to meet the student's unique needs but the student is also deemed entitled to compensatory education to fill gaps in the services provided by such unilateral placement.

Here, the IHO erred by awarding four years of extended eligibility in addition to the tuition funding she directed the district to pay as relief for its denial of FAPE to the student for the 2021-22 school year. The IHO based her finding that FAPE was denied to the student primarily on the CSE's failure to recommend vision education services for the student for the 2021-22 school year. While the two separate due process complaint notices at issue were consolidated for purposes of the impartial hearing, the request for extended eligibility was limited to claims that the district had

9

denied the student a FAPE related to the allegations concerning the 2007-08 through 2018-19 school years. Once the claims for those school years were dismissed by the IHO, the remaining school year at issue upon which relief could be formulated was the 2021-22 school year. The IHO failed to explain, however, why the student's district-funded attendance at iBrain, which provided the student with specially designed instruction and related services, including vision education services, was not adequate to remedy a FAPE denial premised solely on a lack of a recommendation for vision education services.

Of note, while one court has recently endorsed a combined award of tuition reimbursement and compensatory education based on a denial of FAPE for the same time period, in a footnote, the court distinguished a compensatory award in the form of an additional year of tuition at a nonpublic school, noting that an award of tuition reimbursement and compensatory education in the form of an additional year of tuition could be viewed as duplicative remedies (V.W. v. New York City Dep't of Educ., 2022 WL 3448096, at *5 n.3; see J.M. v. Kingston City Sch. Dist., 2015 WL 7432374, at *13 [N.D.N.Y. Nov. 23, 2015] ["Where the parent has not unilaterally enrolled a child in a private school, and thus does not seek retroactive reimbursement, the child may be entitled to compensatory education"). Based on this assessment, it would appear that an award of tuition reimbursement and an award of extended eligibility based on the same denial of FAPE for the same school year would be duplicative.

In addition, the IHO failed to explain the parameters of the extended eligibility award. Rather than merely extending eligibility for special education services to the student, the IHO stated, without further elaboration, that the student should remain at iBrain for the duration of the extended eligibility period. Accordingly, the IHO's grant of extended eligibility potentially also raises an issue with the propriety of a prospective placement at iBrain for four years as relief.

An award of prospective placement in a nonpublic school, under certain circumstances, has the effect of circumventing the statutory process, pursuant to which the CSE is tasked with reviewing information about the student's progress under current educational programming and periodically assessing the student's needs (see Adams v. Dist. of Columbia, 285 F. Supp. 3d 381, 393, 396-97 [D.D.C. 2018] [noting with approval the hearing officer's finding "that the directives of IDEA would be best effectuated by ordering an IEP review and revision, rather than prospective placement in a private school"]; see also Student X v. New York City Dep't of Educ., 2008 WL 4890440, at *16 [E.D.N.Y. Oct. 30, 2008] [noting that "services found to be appropriate for a student during one school year are not necessarily appropriate for the student during a subsequent school year"]). While prospective placement might be appropriate in rare cases (see Connors v. Mills, 34 F.Supp.2d 795, 799, 804-06 [N.D.N.Y. Sept. 24, 1998] [noting a prospective placement would be appropriate where "both the school and the parent agree[d] that the child's unique needs require[d] placement in a private non-approved school and that there [we]re no approved schools that would be appropriate"]), the pitfalls of awarding a prospective placement have been noted in multiple State-level administrative review decisions, including that where a prospective placement is sought by the parents, such relief could be treated as an election of remedies by the parents, where the parents assume the risk that future unforeseen events could cause the relief to be undesirable (see, e.g., Application of a Student with a Disability, Appeal No. 20-123; Application of a Student with a Disability, Appeal No. 19-018).

In this instance, the student still has multiple school years of remaining eligibility for special education without including the IHO's award of four additional years. Accordingly, even if a prospective award for relief were warranted, the CSE should have already produced an IEP for the student that will be in effect for the 2022-23 school year, which has not been the subject of a due process proceeding (see also Eley v. Dist. of Columbia, 2012 WL 3656471, at *11 [D.D.C. Aug. 24, 2012] [noting that prospective placement is not an appropriate remedy until the IEP for the current school year has been completed and the parent challenges the IEP for the current year]). Rather than tying the student to the unilateral placement for the remainder of his current eligibility and further, the CSE should be permitted to go through the process of formulating an educational plan for the student. Requiring that the student only receive education from a specific school would demonstrate that prospective placements almost always serve to circumvent the statutorily required CSE process and generally, except in rare circumstances not present here, constitute an improper usurpation of the CSE's role by the due process system, rather than serve as appropriate remediation for the district's denial of a FAPE to the student for the time period claimed.

Overall, while an IHO has broad discretion to fashion appropriate equitable relief in IDEA matters, the IHO's award of four years of extended eligibility for special education services to the student which also contemplated that the student would attend iBrain during the extended eligibility period, far exceeded an appropriate remedy for the district's denial of FAPE to the student for the 2021-22 school year.

## VI. Conclusion

In summary, having determined that the student is not entitled to extended-age eligibility as relief for the district's denial of a FAPE to the student for the 2021-22 school year, the necessary inquiry is at an end. I have considered the parties' remaining contentions and find that I need not address them in light of my determinations herein.

### THE APPEAL IS SUSTAINED TO THE EXTENT INDICATED

**IT IS ORDERED** that the IHO's decision dated October 19, 2021, is modified by reversing that portion which awarded the student four years of extended eligibility at iBrain as relief for the district's denial of a FAPE to the student for the 2021-22 school year.

Dated:     Albany, New York
           December 8th, 2022

                                        STEVEN KROLAK
                                        STATE REVIEW OFFICER

11